```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA                                         :
                                                                 :
        -v-                                                      :         19-cr-213-2 (LJL)
                                                                 :
CUONG BANG,                                                      :
                                                                 :         MEMORANDUM AND
                                    Movant-Defendant.            :              ORDER
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Movant-Defendant Cuong (Jay) Bang, who was sentenced to serve an eighty-month term of imprisonment followed by five years of supervised release, moved, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release, on the basis of his rapidly progressing blindness and the nature of his offense. Dkt. No. 137. The government consented to Mr. Bang's motion for compassionate release on February 5, 2024. Dkt. No. 139. On February 6, 2024, the Court granted the motion and reduced Mr. Bang's sentence to a term of eighty-one months of supervised release with the condition that he serve the first twenty-one months of that term on home confinement. Dkt. No. 141.[1] This memorandum and order confirms the Court's ruling and explains its reasoning.

## BACKGROUND

This is a case involving a defendant who committed a serious crime but who also, after committing that serious crime, made significant and (thus-far) successful efforts to turn his life

---

[1] The Court directed the government and defendant to meet and confer and to submit a proposed order that would ensure Mr. Bang's release as soon as possible so he could receive needed medical care. Dkt. No. 141. The parties did so and on February 8, 2024, the Court signed a formal order on the motion for a reduction of sentence as well as an amended judgment. Dkt. Nos. 142–43.

around and who, during his term of imprisonment, has suffered from a debilitating and serious medical condition that substantially diminishes his ability to care for himself in prison and for which he is not receiving care by the Bureau of Prisons and, which if not properly treated, would significantly and detrimentally affect his activities of daily living.

On March 25, 2019, Bang was indicted on one charge of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Dkt. No. 1 at 2; Dkt. No. 4 at 1–2. The crime was a serious one. The indictment alleged that from at least February 2019 to March 2019, Mr. Bang served as a courier in his older brother's drug organization. Dkt. No. 1 at 6. On October 6, 2021, Mr. Bang pleaded guilty to this charge without the benefit of a plea agreement. 10/6/21 Minute Entry; Dkt. No. 110.

On April 27, 2022, Mr. Bang appeared for sentencing. 4/27/22 Minute Entry. The Court calculated the applicable Guidelines range as 168 to 210 months' imprisonment. Sentencing Tr. 9. On May 3, 2022, the Court sentenced Mr. Bang to eighty months' imprisonment followed by five years of supervised release. Dkt. No. 126. The Court reasoned that Mr. Bang's offense was "extremely serious" and that the factors of just punishment and general deterrence favored "a lengthy sentence." Sentencing Tr. 35, 37. But the Court concluded that a below-guidelines sentence was warranted in light of Mr. Bang's relatively minor role in the conspiracy. *Id.* at 39; *see, e.g.*, Dkt. No. 139 at 2. Specifically, the Court explained that Mr. Bang's conduct was at the "bottom rung in terms of culpability," given Bang's "minor role" that he carried out "at the direction of [his] brother and under [his brother's] influence." Sentencing Tr. 38–39. The Court noted that Mr. Bang had no proprietary interest in the drugs that were the object of the conspiracy, that he was involved "only for a short time in a single transaction," and that his

participation in the offense was "a product of his addiction." Sentencing Tr. 39; *see* PSR ¶¶ 60–61. The Court also remarked on Mr. Bang's "extraordinary remorse" and his rehabilitation. Sentencing Tr. 41. Following Mr. Bang's arrest in March 2019, he participated in an outpatient substance abuse treatment program and has been sober since October 2021. PSR ¶ 7; Dkt. No. 137 at 3. He turned his life around. He got a job, working initially as a front-line worker at a restaurant in Culver City, California, and rising to the level of manager entrusted with significant responsibility. Sentencing Tr. 42.

Mr. Bang was incarcerated at FCI Terminal Island and had a projected release date of November 9, 2025. Dkt. No. 139 at 2. Mr. Bang, through counsel, argues that there are extraordinary and compelling reasons to grant him compassionate release and to reduce his sentence to time served. He points to his progressing blindness caused by cataracts which, he alleges, has not been properly treated by the Bureau of Prisons. *Id.* at 2–5. As to his cataracts, Mr. Bang asserts that he is now "legally blind, with little to no vision in both eyes," and this "his condition continues to worse[n]." *Id.* at 2. Mr. Bang is unable to take care of himself and needs the assistance of his cellmate to complete basic tasks such as showering. *Id.* at 2–3. One of Mr. Bang's brothers, a pharmacist with a large home, has agreed to provide a place for Mr. Bang to live and act as Mr. Bang's "third-party custodian." *Id.* at 8.

Mr. Bang's vision began to worsen in or about May 2023, and by July 2023, he was diagnosed with a mild and a moderate cataract, and follow-up was recommended in four to six months. *Id.* Ex. A at 8. However, by October 2023, the diagnosis was "clarified" to reflect that Mr. Bang "had severe vision loss due to cataracts bilaterally." *Id.* Ex. A at 6. Cataract surgery was recommended for the following month. *Id.* Ex. A at 4. On October 18, 2023, Mr. Bang was visited by an ophthalmologist, who discovered a mature cataract that needed surgery. *Id.* Ex. A

at 3. On December 22, 2023, Mr. Bang appears to have sought medical attention at the prison with the assistance of his cellmate, complaining of worsening vision. *Id.* Ex. A at 2. A doctor was notified and expressed an intention to follow up on scheduled cataract surgery. *Id.* On January 29, 2024, Mr. Bang visited an outside retinal specialist, who concluded that Mr. Bang had a "visually significant cataract of both eyes affecting activities of daily living including eating and watching TV" and cataract surgery was "anticipated to improve [Bang's] vision and may allow [him] to regain functional abilities." *Id.* Ex. B. at 3. Mr. Bang scheduled a surgical consult for February 14, 2024, and, should the surgeon agree that Mr. Bang requires surgery, a date for surgery will be set. Dkt. No. 139 at 4.

Mr. Bang filed this motion with the Court on January 13, 2024. Dkt. No. 137. At the time, his request for compassionate released filed with the BOP on January 11, 2024, Dkt. No. 139 at 2, had still not been resolved.[2] The BOP denied Mr. Bang's request on January 25, 2024. *Id.* On February 5, 2024, the government consented to Mr. Bang's motion for compassionate release, noting his "minor role in the offense," but requesting that the Court reduce Mr. Bang's sentence to a term of twenty-one months of home confinement followed by five years of supervised release. Dkt. No. 139 at 4. On February 6, 2024, Mr. Bang's counsel responded, noting that although she had not spoken with Mr. Bang about the government's request, she anticipated no objection from Mr. Bang. Dkt. No. 140 at 1. As noted, the Court granted the motion on February 6, 2024. Dkt. No. 141.

## DISCUSSION

Section 3582(c)(1)(A)(i) of Title 18 of the United States Code provides that the Court

---

[2] Mr. Bang requested that the Court to resolve his motion prior to the exhaustion of administrative remedies. Dkt. No. 137 at 4 n.3. The Court urged Mr. Bang to exhaust administrative remedies before the Court resolved the motion. *See* 1/19/24 Minute Entry.

4

"may not modify a term of imprisonment once it has been imposed," except that:

> the court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).[3] Mr. Bang, as the moving party, bears the burden of proving that he is entitled to the requested relief under Section 3582(c). *United States v. Phillibert*, 557 F. Supp. 3d 456, 458 (S.D.N.Y. 2021) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (quoting *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992))).

The United States Sentencing Commission has adopted a Policy Statement, effective November 1, 2023, that addresses defendant-initiated motions for compassionate release, including the circumstances that, in the Sentencing Commission's view, constitute extraordinary and compelling reasons for such relief. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The Commission's guidance identifies six circumstances that, singly or in combination, provide extraordinary and compelling reasons for compassionate release. U.S.S.G. § 1B1.3(b). Two of those circumstances are relevant here. Section 1B1.13(b)(1) provides that the medical condition of the

---

[3] "Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." *United States v. Corbett*, 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

defendant can provide an extraordinary and compelling reason for compassionate release under a number of circumstances including the following:

> (B) The defendant is –
>
> (i) suffering from a serious physical or medical condition
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover [or]
>
> (C) The defendant is suffering from a medical condition that requires long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. U.S.S.G. § 1B1.13(b)(1), (B) & (C).

Section 1B1.13(b)(5) provides:

> **(5) Other Reasons.** The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). U.S.S.G. § 1B1.13(b)(5).[4]

The "other reasons" need not "be similar in nature and consequence to the specified reasons." *Corbett*, 2023 WL 8073638, at *4 (quoting 88 Fed. Reg. 28,254-01). It is sufficient that they are "similar only in gravity." *Id.*

Rehabilitation alone is not an extraordinary or compelling reason for a sentence reduction. *See United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with

---

[4] Paragraph (2) of Section 1B1.13(b) of the Guidelines addresses when the age of the defendant can provide an extraordinary and compelling reason for compassionate release, paragraph (3) addresses the family circumstances of the defendant, and paragraph (4) addresses when the defendant is the victim of abuse in a correctional institution.

6

other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

Before reducing a defendant's sentence, a district court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "In evaluating compassionate-release motions, 'courts regularly consider whether compassionate release would be consistent with § 3553(a) by considering how early release would impact the aims of the original sentence.'" *United States v. Harper*, 2022 WL 599037, at *1 (2d Cir. Mar. 1, 2022) (summary order) (first quoting *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) (summary order), and then citing *United States v. Kanter*, 853 F. App'x 723, 726–27 (2d Cir. 2021) (summary order)).

Mr. Bang has demonstrated extraordinary and compelling reasons for a reduced sentence. Mr. Bang's circumstances are not ordinary. He suffers from a serious and debilitating medical condition that requires expert and specialized medical care that he cannot receive in prison. *See, e.g.*, *United States v. Brady*, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (considering stability of condition and defendant's ability to manage the condition). That condition substantially diminishes his ability to care for himself in prison. The condition can be treated if he is released. *See United States v. Rodriguez*, 454 F. Supp. 3d 224, 229 (S.D.N.Y. 2020) (considering whether the defendant would be safer outside of prison). If he were not to be released and is not treated properly and quickly, the progress of the medical condition would severely and detrimentally impact his activities of daily living and impede his ability to become a productive member of society. The impact of the condition on Mr. Bang and the fact that the condition can be addressed if he is released (as well as the lengthy time he has already served in prison, *see United States v. Butler*, 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020)

(considering proportion of sentence served)), make his plea for a reduced sentence compelling, *see, e.g.*, *United States v. Salemo*, 2021 WL 4060354, at *4 (S.D.N.Y. Sept. 7, 2021) (finding extraordinary and compelling reasons for sentence reduction of defendant's "growing list of medical problems," including cataracts); *United States v. Salazar-Espinosa*, 2023 WL 5934920, at *2 (granting compassionate release motion based on doctor's testimony that defendant "definitely require[d] cataract surgery of the left eye"); *United States v. Hussain*, 2023 WL 4529625, at *5 (S.D.N.Y. July 12, 2023) (granting compassionate release motion based on defendant's glaucoma and cataracts which left the defendant "essentially blind").  Moreover, the inadequacy of the defendant's treatment while incarcerated further weighs in favor of granting the motion for compassionate release.  *See, e.g.*, *United States v. Robinson*, 2022 WL 2204126, at *2 (2d Cir. June 21, 2022) (summary order).  Mr. Bang has been seeking care for his cataracts for nearly a year, and was scheduled for cataracts removal surgery at least once before, but the surgery ultimately did not happen.  In the intervening time, Mr. Bang's vision has continued to worsen.

Mr. Bang has demonstrated that sentence reduction would be consistent with the Section 3553(a) factors.  *See, e.g.*, *United States v. Alba*, 2023 WL 220988, at *3 (2d Cir. Jan. 18, 2023) (summary order).  The primary interests justifying Mr. Bang's initial sentence were those of just punishment and general deterrence; the Court found that Mr. Bang did not present a threat to the safety of the community and that neither the interests of specific deterrence nor those of incapacitation justified a longer sentence.  Sentencing Tr. 40–43.  As it stands, Mr. Bang does not have a significant amount of prison time remaining on his sentence and the interests of just punishment will still be served by converting that remaining time into a period of home detention.  *See, e.g.*, *United States v. Gill*, 2023 WL 2662596, at *4 (S.D.N.Y. Mar. 28, 2023)

(considering the amount of time remaining on defendant's sentence in evaluating whether 3535(a) factors are served); *United States v. DeJesus*, 2022 WL 1284563, at *2 (S.D.N.Y. Apr. 29, 2022) (same). And, conversion of the short remainder of the eighty-month prison sentence to home detention will not disserve the interests of general deterrence, given that Mr. Bang was a low-level participant in a single drug transaction who became involved in the crime under the influence of his brother while he was struggling with addiction. *See, e.g.*, *United States v. Kosic*, 2020 WL 3100459, at *2 (S.D.N.Y. June 11, 2020) (considering whether early release will "undo the important societal interests expressed in the imposed sentence").

Mr. Bang's lack of criminal history further supports the Court's conclusion. *See, e.g.*, *United States v. Taboada*, 2023 WL 1468533, at *2 (S.D.N.Y. Feb. 2, 2023) (considering criminal history of defendant seeking compassionate release). At the time of his initial sentencing, Mr. Bang had zero criminal history points, which put his Criminal History Category at I. PSR ¶ 5; *see* Dkt. No. 137. Mr. Bang also has exhibited a model record while serving his sentence. *See, e.g.*, *United States v. Boccanfuso*, 2023 WL 3741980, at *4 (S.D.N.Y. May 31, 2023) (noting that a defendant's "clean disciplinary record" weighed in favor of compassionate release). He has not sustained any disciplinary infractions during his time in custody, *see, e.g.*, PSR ¶ 8; Dkt. No. 137 at 3, further reflecting his sustained rehabilitation, *see, e.g.*, *United States v. Fisher*, 493 F. Supp. 3d 231, 238 (S.D.N.Y. 2020).

Mr. Bang has also presented a concrete reentry plan that will facilitate his transition out of prison. *See, e.g.*, *United States v. Fisher*, 493 F. Supp. 231, 238 (S.D.N.Y. 2020). He will live with his brother, who is gainfully employed, and willing to serve as his "third-party guardian." This support, combined with Mr. Bang's serious medical condition, makes recidivism unlikely.

Finally, the Court was not presented with, and thus did not consider, evidence of Mr. Bang's progressive blindness at his original sentencing. *See United States v. Moss*, 2022 WL 2802702, at *2 (S.D.N.Y. July 15, 2022) (considering whether the court had considered the medical conditions that formed the basis for the motion for compassionate release at the initial sentencing). Accordingly, the Court concludes that a reduction in Mr. Bang's sentence is not inconsistent with Section 3553(a).

## CONCLUSION

For the foregoing reasons, the Court granted Mr. Bang's motion for compassionate release on February 8, 2024, Dkt. No. 142, and entered an amended judgment that same day, modifying Mr. Bang's prison sentence to time served and eighty-one months of supervised release, the first twenty-one of which are to be served on home confinement, Dkt. No. 143.

SO ORDERED.

Dated: March 11, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge